UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIM NO. 18CR10281-MLW |
| ) | |
| JOSE POLANCO GUERRERO, ) | |
| Defendant. ) | |

### DEFENDANT'S EXPEDITED MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. §3582(c)(1)(A)

Defendant, Jose Polanco Guerrero ("Mr. Polanco Guerrero"), respectfully moves this Court for an order reducing his sentence to time served based on "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). COVID-19 is an unprecedented global health emergency that presents a particularly serious risk to vulnerable people, such as Mr. Polanco Guerrero, a 50-year-old man with well-documented and serious co-morbid medical conditions. Specifically, Mr. Polanco suffers from hypertension, asthma and obesity. Mr. Polanco Guerrero has already contracted COVID-19 at Wyatt and reports that he still has not recovered. *See Exhibit A* (Mr. Polanco Guerrero's Medical Records from Wyatt).

The current COVID-19 conditions at Wyatt are so extreme that the Rhode Island Department of Health has directed Wyatt to reduce the number of detainees out of their cells. As a result of this directive, Wyatt has implemented new guidelines including serving detainees meals in their cells, suspension of outside programs, suspension of visitation and suspension of "some unnecessary Medical Appointments." *See Exhibit B* (11/16/2020 update from Wyatt). Moreover, Wyatt has suspended transfer of detainees to BOP prisons absent

1

an order to do so.  (Id.)

Granting this motion will reduce Mr. Polanco Guerrero's sentence by approximately six months; the BOP website projects a May 17, 2020 release date.  Mr. Polanco Guerrero poses a low security risk and has significant medical vulnerabilities.   For the reasons described in this motion, a time served sentence is justified by extraordinary and compelling reasons, serves the interests of justice, and is consistent with the 18 U.S.C. § 3553(a) factors.

## BACKGROUND

A.  Procedural Background

On July 26, 2018, Mr. Polanco Guerrero was arrested on a warrant based on a complaint charging crimes relating to his improper use of another's Social Security Number. (Dkt No. 3; 12).   He was detained until August 24, 2018, when this Court ordered his release including the conditions of electronic monitoring and curfew.  (Dkt. No. 25).  On October 11, 2019, the defendant and the Government entered into a plea agreement.  (Docket No. 56).  On October 18, 2019, Mr. Polanco Guerrro pleaded guilty to one count of false representation of a Social Security Number.  (Docket No. 57).  On March 9, 2020, a revised plea agreement entered (excising a stipulated order of removal), and the Court sentenced Mr. Polanco Guerrero to the agreed-upon twelve month sentence of incarceration and three years of supervised release.  (Docket No.  66; 67).

Mr. Polanco Guerrero was ordered to report to the US Marshals on April 20, 2020. (Docket No. 66).  Pursuant to the Marshals' instruction, Mr. Polanco Guerrero reported that day to Wyatt.  Wyatt would not accept him because he was coughing and sneezing and had been exposed to someone with COVID-19.  (Docket No. 71).  This Court allowed the parties' joint motion to continue the date to self-report and ordered Mr. Polanco Guererro to home

confinement pending that time.  (Docket No. 72).

  B.  <u>Mr. Polanco Guerrero's Medical Vulnerabilities and Contraction of Covid-19</u>

On June 15, 2000, Mr. Polanco Guerrero was accepted into Wyatt.  His screening records documented that he had both hypertension and asthma.  (Exhibit A).  Mr. Polanco Guerrero who is 5'8' weighed 199.5 pounds.  (*Id.*).

On October 27, 2020, Mr. Polanco Guerrero was tested for COVID-19 and on October 30, 2020, a report issued that he had tested positive.  *See Exhibit C* (COVID test results attached hereto).  He had reported to counsel and his wife difficulty breathing, difficulty smelling and tasting and feeling like he was "choking" at night.  On November 9, 2020, a doctor's note indicated that Mr. Polanco Guerrero's "BP remains somewhat elevated i.e. 170/22 – 132/90 – 177/84 for 11/1, 11/5 + 11/6 respectively."  (Exhibit A).  This occurred even after Mr. Polanco Guerrero's dosage of Lisinopril was increased in August 2020 from 20 mg a day to 40 mg a day.  (*Id.*)  On November 9, 2020, the doctor ordered that Mr. Polanco Guerrero take ten milligrams of Norvase daily in addition to Lisinopril.  (*Id.*)   Although Wyatt has characterized Mr. Polanco Guerrero (alone with many other infected inmates) "cleared," Mr. Polanco Guerrero has reported to his wife that he still has sharp body pain, headaches and shortness of breath.

  C.  <u>COVID-19 Conditions At Wyatt</u>

On October 20, 2020, Wyatt reported 60 positive COVID-19 cases - - 52 prisoners and 8 employees.  *See*

> https://www.abc6.com/wyatt-detention-facility-reports-60-total-positive-covid-19-tests/

In that article, a spokesperson for Wyatt stated:  "Given that the Wyatt Detention Facility is a

congregate setting, much like nursing homes and hospitals, and that the coronavirus spreads easily as a respiratory-based illness, we and RIDOH anticipated we would have additional cases and are fully prepared to respond to this increase in cases among our population[.]" The spokesperson proved to be prescient because in early November, it was reported by the Marshals that Wyatt had 16 employees out on COVID-related leave and 72 positive detainees. As of November 16, the Marshals reported "26 new positives from testing we did on last Thursday.  The morning of 11/16 we had 50 active cases just cleared 19 patients for a total of 31…" (Exhibit B).

As a result of the horrific outbreak of COVID-19 at Wyatt, the Rhode Island Department of Public Health has directed Wyatt to "reduce the detainees out of their cells at a time to enhance Social Distancing.  Based on these guidelines units will be recreating certain groups of cells together in each unit.  Also, detainees will be served their meals in their cells…:" (*Id.*).  Wyatt announced certain steps "to continue to mitigate this moving forward," including suspension of transfers of detainees out of the facility….; suspending some unnecessary Medical Appointments; canceling Detainee Visitation; suspending any outside programs…"

In essence, at least for the foreseeable future, Mr. Polanco Guerrero faces lockdown, inability to transfer to a BOP prison, lack of outside programming and potentially medical services, and lack of visitation (from his wife and children).  Although Mr. Polanco Guerrero has fully accepted responsibility and agreed to a 12 month sentence of incarceration, unforeseen dangers and consequences of a severe COVID-19 outbreak at Wyatt militate in favor of compassionate release.  As the Court is aware, Mr. Polanco Guerrero has no criminal record, has no history of violence and is a devoted husband and father.  He complied with all the

stringent measures of release perfectly; and indeed was on "house arrest" for a period of two months prior to his re-reporting to Wyatt (which time has not been calculated as part of his sentence). Counsel suggests that he is truly a candidate to be released immediately and to begin supervised release. Mr. Polanco Guerrero can return home to his wife Merleny and his minor children. The family's address is 64 Rosseter Street, Apt. 1R, Dorchester, MA 02121; his wife's cell phone number is: 857-383-0502.

## ARGUMENT

This Court can and should act quickly to release Mr. Polanco Guerrero. Ironically, having turned Mr. Polanco Guerrero away for COVID-19 exposure in April 2020, now Wyatt has been unable to control the outbreak of the virus. Mr. Polanco Guerrero who is 50 years old and with serious medical conditions has contracted COVID-19 and is still suffering deleterious effects. With only six months remaining on his sentence, the sentencing goals of just punishment and deterrence have been achieved. Compassionate release of Mr. Polanco Guerrero would pose no danger to the public, and is the most humane option in light of his medical problems and the issues he will face as a result of COVID-dictated changes in procedures at Wyatt.

The First Step Act empowered this Court to make an independent determination as to whether there are "extraordinary and compelling reasons" for compassionate release. *See* 18 U.S.C., Section 3582(c)(1)(A). Prior to 2018, only the Director of the Bureau of Prisons ("BOP") could file these kinds of "compassionate-release motions." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). In reality, the BOP rarely filed for relief on behalf of prisoners. Although the BOP was first authorized to file compassionate-release motions in 1984, an average of only 24 prisoners were released each year through

BOP-filed motions from 1984 to 2013.[41] Against this backdrop, the First Step Act was enacted in 2018, and is a landmark piece of criminal-justice reform legislation that "amend[ed] numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *Brown*, 411 F. Supp. 3d at 448 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)). In an effort to improve and increase the use of the compassionate-release process, the First Step Act amended § 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role.[42] Section § 3582(c)(1)(A) now authorizes courts to modify an otherwise-final term of imprisonment, in relevant part, "upon motion of the defendant after [she] has fully exhausted all administrative rights . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," if it is consistent with the § 3553(a) factors and the Sentencing Commission's policy statements. § 3582(c)(1)(A), § 3582(c)(1)(A)(ii). Mr. Polanco Guerrero is eligible for compassionate release as his medical vulnerabilities and advanced age present "extraordinary and compelling reasons." As a 50-year-old man with multiple conditions, continued incarceration would place Mr. Polanco Guerrero at an unacceptable risk of death or serious injury. Second, in light of both the danger and restrictions imposed by the pandemic, an order reducing Mr. Polanco Guerrero's sentence to time served would best achieve §3553(a)'s directive to impose sentence that is "sufficient but not greater than necessary."

> I. **Extraordinary and Compelling Reasons Exist to Grant Compassionate Release and Reduce Mr. Polanco Guerrero's Sentence.**

The COVID-19 pandemic, combined with Mr. Polanco Guerrero's vulnerability due to his age and medical conditions are "extraordinary and compelling" reasons to reduce his

6

sentence. Numerous courts have found that the combination of the COVID-19 pandemic and a defendant's debilitating or high- risk health conditions and comorbidities constitute "extraordinary and compelling" reasons for compassionate release. *See, e.g.*, *United States v. Rodriguez*, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (prisoner's diabetes, high blood pressure and liver abnormalities constituted "compelling reasons," despite the fact that the BOP classified him at the lowest care level and that the government argued that his conditions were not unusual: "In the absence of a deadly pandemic that is deadlier to those with [the defendant's] underlying conditions, these conditions would not constitute 'extraordinary and compelling reasons.' It is the confluence of COVID-19 and [the defendant's] health conditions that makes this circumstance extraordinary and compelling."); *United States v. Zuckerman*, 2020 WL 1659880 at *5 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release to 75 year-old prisoner with diabetes, hypertension and obesity who was housed at FCI-Otisville in dormitory-style housing); *United States v. Lacy*, 2020 WL 2093363 (C.D. Ill. May 1, 2020) (granting compassionate release to 31 year-old defendant suffering from diabetes, severe obesity and hypertension); *United States v. Saad*, 2020 WL 2251808 (E.D. Mich. May 5, 2020) (granting compassionate release to 71 year- old defendant with chronic kidney disease, diabetes, hypertension and other medical conditions); *United States v. Gorai*, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release to a 34-year-old defendant with asthma as the only identified medical condition); *United States v. Smith*, 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020) (finding age and medical conditions "such as asthma— place him at a higher risk" and granting release. Courts have found "extraordinary and compelling" circumstances even when there are not yet any COVID-19 positive cases within a defendant's particular institution or BOP facility. *See, e.g., United States v. Resnick*,

2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) (granting compassionate release to 65 year-old prisoner with diabetes and end-stage liver disease who was housed at FMC-Devens prior to any positive cases); *United States v. Muniz,* 2020 WL 1540325 (Mar. 30, 2020) (granting compassionate release to prisoner with end stage renal disease, diabetes, and arterial hypertension housed at FCI-Butner prior to any positive cases); *United States v. Amarrah*, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (granting compassionate release to 45 year old defendant with Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma, despite the fact that there are currently no confirmed cases of COVID-19 at FCI-Loretto); *United States v. Pabon*, 2020 WL 2112265 (E.D. Pa. May 4, 2020) (reducing 46 month sentence to 14 months for 54 year-old prisoner with diabetes, hypertension, hemophilia and other ailments, despite the fact that there are currently no confirmed cases of COVID-19 at Lewisburg Camp).

The Government may assert that release is not necessary in light of Mr. Polanco Guerrero's already contracting COVID-19. To date, based on counsel's research, it does not appear that re-infection rates have been studied sufficiently. But anecdotally, very recent reports see respected immunologists suggesting the re-infection rates are low but not insubstantial, and that immunity gained as a result of contracting COVID may not last more than three or four months. *See* https://www.dailymail.co.uk/news/article-8953043/Coronavirus-UK-scientist-says-risk-reinfection-low-people-cautious.html and https://www.wsfa.com/2020/11/11/those-who-recover-covid-are-risk-reinfection/. And unfortunately, the country is experiencing its worst COVID-19 death numbers in the last six months. See https://www.msn.com/en-us/health/medical/us-coronavirus-1-707-covid-19-deaths-were-reported-in-1-day-that-s-the-highest-daily-death-toll-in-6-months/ar-

BB1b7mEQ?ocid=msedgntp.

Moreover, there are many cases to date where a court has granted compassionate release for an inmate who already had contracted COVID-19.  *See, e.g.*:

*United States v. Vazquez Torres*, Case No. 19-cr-20342- BLOOM, DE 58 at **6-7 (S.D. Fla. July 10, 2020) (granting compassionate release to a defendant with several underlying medical issues including hypertension who had contracted COVID-19 due to "BOP's apparent inability to adequately treat Defendant's COVID-19 infection;" finding that release would "allow[] him to seek medical care and treatment by providers who are familiar with his medical issues and equipped to treat him"); *United States v. Huerte*, Case No. 11-cr-20587-SCOLA, DE 1584 at 2-3 (S.D. Fla. July 31, 2020)(granting compassionate release to a defendant who was obese and suffered from an upper respiratory infection, even though her COVID illness had not required hospitalization, and even though she now tested negative, because of the possibility that she could "still develop complications from the disease, and crucially [] was still susceptible to catching Covid-19 a second time," finding that "regardless of whether or not Huarte currently has Covid19, the compassionate release analysis is the same because of the risk of death from COVID given defendant's underlying conditions, and the "danger of contracting the disease again"); *United States v. Fletcher*, Case No. TDC-05-0179-01, DE 856 (D. Md. July 13, 2020) (granting compassionate release to 65-year old inmate serving a life sentence who had hypertension and other risk factors for serious illness if infected with COVID; noting that the "threat to Fletcher has already come to pass" – he was infected and deemed "recovered," but then returned to quarantine because he may have contracted COVID-19 again or at least continues to have symptoms reflecting the lingering effects of COVID-19"); *United States v. Davidson*, 2020 WL 4877255, at *20

(W.D. Pa. Aug.20, 2020) (releasing defendant who had tested positive for COVID, was largely asymptomatic, and appeared to "recover," because it was unclear whether "his 'recovered status ensures that he is not currently suffering from lingering or latent effects caused by contraction of the virus (even if unbeknownst to him at this time), or that his long-term health has not been negatively impacted;" finding that the defendant's several pre-existing medical conditions, "viewed in light of the COVID pandemic," were "extraordinary and compelling" for purposes of compassionate release); *United States v. Williams*, No. 5:16-cr-386, DE 87 (N.D. Ohio Sept. 2, 2020) (releasing defendant who "has already contracted COVID-19 once" noting "the CDC does not know if someone can be re-infected with COVID-19");

## II.  A Reduction in Sentence is Warranted Under the Section 3553(a) Factors.

When extraordinary and compelling reasons are established, the Court must consider the the relevant sentencing factors in § 3553(a) to determine whether a sentencing reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, a reduction sentence to time served is warranted under the § 3553(a) factors.  In this case , Mr. Polanco Guerrero illegally used another's Social Security Number, pleaded guilty and accepted responsibility.  It is clear from the PSR that the reasons for his committing this crime were so that he could work and support his family, and not to steal or take from the victim whose SSN he used.  Mr. Polanco Guerrero is currently 50 years old and scheduled for release in six months.  His long-standing compliance with all of the court's orders and his lack of any previous criminal record assuages any concerns regarding danger to the public in the United States.

Although a 12-month sentence, when imposed, was sufficient but not greater than necessary at that time, the calculus for that determination changes in the face of a pandemic which already has adversely affected Mr. Polanco Guerrero. In the age of COVID-19, "sufficient but not greater than necessary" takes on new meaning, and particular significance, for vulnerable at-risk inmates. That is, "[t]o avoid a sentence that *was* sufficient but no greater than necessary from becoming one immeasurably greater than necessary," the compassionate release of vulnerable, low security inmates like Mr. Polanco Guerrero is appropriate. *United States v. Park*, 2020 WL 1970603 at *5 (S.D.N.Y. Apr. 24, 2020) (emphasis added) (internal citation omitted). *Accord United States v. Mel*, 2020 WL 2041674 at *3 (D.Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

Here, a reduction or modification of Mr. Polanco Guerrero's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. Given the COVID-19 pandemic, the service of most of his sentence now adequately reflects the seriousness of his offense and has provided just punishment. 18 U.S.C. § 3553(a)(2)(A). *See, e.g., United States v. Rodriguez*, 2020 WL 1627331 at *11 (E.D. Pa. Apr. 1, 2020) (at-risk inmate's service of all but three years of his sentence – "most of the original sentence imposed" – was "long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes").

Moreover, continuing to detain Mr. Polanco Guerrero at Wyatt which is facing a COVID outbreak that the Rhode Island health officials have deemed to require major

11

restrictions will not serve to rehabilitate Mr. Polanco Guerrero. Instead, for the foreseeable future, he will essentially be "locked down," denied any transfer to a BOP prison, denied outside programming, potentially denied medical treatment and denied visitation. As recent medical records suggest, Mr. Polanco Guerrero's high blood pressure is <u>not</u> well controlled. There is no question that Mr. Polanco Guerrero will be safer at home with his family, where he can take greater measures to care for his medical needs. § (3553(a)(2)(D); *see also United States v. Scparta,* 2020 WL 1910481 at *8 (S.D.N.Y. Apr. 20, 2020) ("due to the COVID-19 pandemic, the "history and characteristics of the defendant" and the "need... to provide the defendant with needed ... medical care," § 3553(a), now weigh heavily in favor of Mr. Scparta's release, given the health risk that continued incarceration poses to him."). For these reasons, a sentencing reduction is warranted under § 3553(a).

### III.   Mr. Polanco Guerrero Cannot Exhaust Administrative Remedies And This Motion Is Thus Ripe For Review

Under section 3582(c)(1)(A) the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . ." In other cases, as here, where the defendant had not yet been designated to a BOP facility, the "exhaustion" requirement has been excused on futility grounds. *See United States v. Carver,* 19-CR-06044-SMJ (E.D. Wash. April 8, 2020), https://ecf.waed.uscourts.gov/doc1/19513806437 (denying release but finding that movant in custody of US Marshals, as Mr. Polanco is here at Wyatt, was excused from

the "exhaustion" requirement as it would be futile).  See also *United States v. Jepsen*, No. 3:19-CV-00073(VLB) (D. Conn. Apr. 1, 2020); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15 (E.D. Wash. Mar. 31, 2020).

Moreover, even if this Court were to find that the "exhaustion" requirement were not excused on futility grounds, this Court could still exercise its discretion to decide the motion because exhaustion for compassionate release has been found to not be jurisdictional by two judges in this district.  *See United States v. Ramirez*, 17-CR-10328-WGY (D. Mass., May 12, 2020); *United States v. Guzman Soto*, 18-cr-10086-IT (D. Mass., April 17, 2020).

## CONCLUSION

For the foregoing reasons, Mr. Polanco Guerrero respectfully requests that the Court grant a reduction in his sentence to time served to allow him to be released back to his home and family to begin his supervised release.

    Respectfully submitted,

    JOSE POLANCO GUERRERO
    By His Attorney,

    /s/Karen A. Pickett
    _____
    Karen A. Pickett (BBO # 633801)
    PICKETT LAW OFFICES, PC
    125 High St., 26th Floor
    Boston, MA  02110
    617 423 0485
    kpickettlaw@gmail.com

November 18, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 18, 2020.

*/s/ Karen A. Pickett*